IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SCOTT MATTHEWS, AIS 185418,        :

     Plaintiff,                              :

vs.                                                         CA 11-00514-CG-C

                             :

WARDEN WHITE, *et al.*,

                             :

     Defendants.

## SUPPLEMENTAL REPORT AND RECOMMENDATION

On September 25, 2012, the undersigned entered a report and recommendation that plaintiff's complaint, filed pursuant to 42 U.S.C. § 1983 (Doc. 4), be dismissed without prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief can be granted (Doc. 13).[1]  In that report and recommendation, however, plaintiff was specifically advised that if he believed his constitutional rights "had been violated based on the facts presented in his complaint, but that he failed to articulate his claims in the complaint," he could file those claims in an amended complaint "on the Court's complaint form for a § 1983 action within the time period for filing an objection to the Report and Recommendation." (Doc. 13, at 8.) Within the time period for filing objections to the foregoing report and recommendation, specifically on October 12, 2012, Matthews filed an amended complaint (Doc. 14) and two weeks later, on October 26, 2012, a Supplemental

---

[1]     More specifically, the undersigned determined that plaintiff failed to state a claim of deliberate indifference against the named defendants, Warden White, Deputy Warden Mayers, and CMS.  (Doc. 13, at 5-7.)  The court found "[p]laintiff's allegations [] [de]void of information that would show any defendant knew that an active case of tuberculosis was present and then that each defendant deliberately disregarded the risk posed to inmates (not to mention staff)." (*Id.* at 5.)  In addition, it was determined that plaintiff failed to plead sufficient facts to prove liability against Warden White or Deputy Warden Mayer for the actions of their subordinates under the theory of *respondeat superior* or against CMS for a custom or policy that caused Matthews a constitutional deprivation.  (*Id.* at 6-7.)

Amended Complaint (Doc. 16). The undersigned finds that though Matthews was extended the opportunity to cure his pleading deficiencies, his amended complaints fail to state an Eighth Amendment violation; therefore, it is the recommendation of the Magistrate Judge, entered pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), that this action be dismissed with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief can be granted (*see* Doc. 13).

**I.   Summary of Factual Allegations and Procedural History.**

Plaintiff filed this lawsuit because he contracted latent tuberculosis ("TB") while housed at Fountain Correctional Center ("Fountain"). (Doc. 4, at 6; *see also* Docs. 14 & 16.) For this injury, he is suing (1) Warden White, (2) Deputy Warden Mayers, (3) CMS,[2] (4) Dr. Oscar Lopez, (5) Licensed Practical Nurses at Fountain ("LPNs"), (6) Registered Nurses at Fountain ("RNs"), (7) the Director of Nurses at Fountain ("DON"), (8) the Alabama Department of Corrections Insurance "Liabilitors"[3] ("ADOC insurance"), and (9) the CMS Insurance "Liabilitors"[4] ("CMS insurance"). (Doc. 16 at 1-2.) More specifically, a liberal construction of plaintiff's complaint, as twice amended, establishes

---

[2]     In Section III of the complaint, as amended, plaintiff states that defendant CMS is employed as the medical staff at Fountain. (*Compare* Doc. 4, at 13 *with* Doc. 14, at 5.) The Court again concludes, as it did in the report and recommendation issued on September 25, 2012 (Doc. 13, at 1 n.1), that plaintiff intended CMS to be the defendant inasmuch as a prison medical staff is not a person capable of being sued. *See Stallworth v. Monroe County Hosp.*, CA No. 10-0520-CG-C, 2012 WL 2921838, at *4 (S.D. Ala. Jun. 21, 2012) (unpublished) (collecting cases holding that the medical staff of a prison or jail is not a legal entity subject to suit or, otherwise, is not a person for § 1983 purposes), *report and recommendation adopted*, 2012 WL 2914233 (S.D. Ala. July 17, 2012). Furthermore, CMS is the abbreviation for Correctional Medical Services, Inc., a provider of medical services to inmates in the custody of the Alabama Department of Corrections. *Mixon v. Corizon, Inc.*, CA No. 11-0367-WS-C, 2012 WL 671929, at *1 (S.D. Ala. Feb. 16, 2012) (unpublished), *report and recommendation adopted*, 2012 WL 652017 (S.D. Ala. Feb. 29, 2012). Recently, the medical provider's name was changed to Corizon, Inc. *Id.*

[3]     The Court is unfamiliar with this party or term and assumes Plaintiff means the insurance carrier for the Alabama Department of Corrections.

[4]     The Court is, also, unfamiliar with this named party and assumes Plaintiff means the insurance carrier for CMS.

that he is claiming that the defendants were deliberately indifferent to his health and safety by exposing him to active TB, resulting in his testing positive (and being treated) for latent Stage II TB. (*Compare* Doc. 4, at 6 *with* Doc. 14, at 4 and Doc. 16, at 1-3.)

In a general description of his claim, plaintiff alleges that he was transferred from Bullock Correctional Facility to Fountain in August of 2010.  (Doc. 4, at 6).  At the time of his transfer, plaintiff's sole prescription medications were Pro-Ventolin (an asthma medication) and Trazodone (an anti-anxiety/depression medication); otherwise, he was in good health.  (*Id.*)  Upon his arrival at Fountain, Matthews was placed in H-Dorm, a 190-man dorm, where inmate Timothy Holmes was also housed.  (*Id.*).  On April 21, 2011, inmate Holmes was transferred to Kilby Correctional Center ("Kilby") because he had active TB.  (*Id.*) On April 24, 2011, plaintiff had visitation with his girlfriend and family.  (*Id.*)  The following day, April 25, 2011, defendants White and Mayers locked down H-dorm, quarantining it, so the Alabama Health Department could test every man in H-Dorm for TB.  (*Id.*)

On April 28, 2011, without notice of why he was being locked down, plaintiff was placed to Fountain's segregation unit. (*Id.* at 10.) The next morning, personnel with the Alabama Health Department informed plaintiff that his x-rays showed that he had contracted latent (Stage II) TB.[5] (*Id.*)  That day, plaintiff was transferred to Kilby, placed in isolation, and prescribed several medications for treatment of TB, which he lists (*compare* Doc. 4, at 10-11 *with* Doc. 14, Attached Objections, at 3-4) and states that he was still taking as of November, 2011 to January, 2012 (*id.* at 4).  Plaintiff filed this action

---

[5]      Class II TB is defined as having the TB infection, but no active disease. http://en.wikipedia.org/wiki/Tuberculosis_classification (last visited March 21, 2013).

while he was being treated at Kilby, but has since advised the Court that he has been returned to Fountain. (Doc. 9.)

Plaintiff has now twice amended his complaint (*see* Docs. 14 & 16) to try to remedy the deficiencies recognized in the undersigned's September 25, 2012 report and recommendation (*see* Doc. 13).[6]  In his first amended complaint, filed October 12, 2012, Matthews avers that Dr. Oscar Lopez "was surely aware of inmate Timothy Holmes not taking his medications and all individual defendants are liable for violation of 14th & 8th amendment rights due to their deliberate indifference to a serious need[,]" because they "failed to take proper actions to prevent this contagious outbreak[.]" (Doc. 14, at 4.) In his Supplemental Complaint, filed October 26, 2012, plaintiff contends that "[a]ll medication dispensing nurses each shift that was aware of Timothy Holmes not taking prescribed tuberculosis medication properly[,]" that is, unidentified LPNs, RNs, and the DON, failed to notify the proper person or persons that Timothy Holmes was not taking his prescribed TB medication (INH) "properly." (Doc. 16, at 1-2).  Plaintiff further alleges that despite daily and/or weekly meetings between the medical staff and the Warden and/or Deputy Warden in which inmates who must take INH are discussed, the medical staff "did not notify the proper person or persons [about] Timothy Holmes not taking his medications properly[,]" and Warden White and Deputy Warden Mayers "[d]id not take proper actions on Timothy Holmes when [they were] aware & notified of his" failure to take his medications.  (*Id.* at 2.)[7]

---

[6]     In the amended complaints, plaintiff names as additional defendants: (1) Oscar Lopez, M.D.; (2) all LPNs at Fountain; (3) all RNs at Fountain; (4) the DON at Fountain; (5) ADOC Insurance; and (6) CMS Insurance.  (*Compare* Doc. 14, at 5 *with* Doc. 16, at 1-2.)

[7]     No additional information is provided for defendants ADOC insurance or CMS insurance.  (*Id.*) For relief, plaintiff seeks punitive, compensatory, and nominal damages. (*Compare* Doc. 14, at 7 *with* Doc. 16, at 3.)

## II.    Standard of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because plaintiff is proceeding *in forma pauperis*, this Court is charged with reviewing his amended complaints (Docs. 14 & 16) pursuant to 28 U.S.C. § 1915(e)(2)(B). Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in either law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-1832, 104 L.Ed.2d 338 (1989).[8]  A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit or the claim seeks to enforce a right or interest "which clearly does not exist[.]"  *Id.* at 327, 109 S.Ct. at 1833.

A complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.  *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).  "A dismissal under § 1915(e)(2)(B)(ii) is governed by the same standard as a dismissal under Federal Rules of Civil Procedure 12(b)(6)." *Smith v. Florida Department of Corrections,* 375 Fed.Appx. 905, 909 (11th Cir. Apr. 8, 2010),[9] citing *Mitchell v. Farcass, supra*.  To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show facial plausibility.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007); *Smith, supra,* at 909 ("Dismissal for failure to state a claim is appropriate when the facts as pled do not state a claim for relief that is plausible on its face.").  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  In other words, "[f]actual

---

[8]       The frivolity and the failure-to-state-a-claim analysis contained in *Neitzke v. Williams* was unaltered when Congress enacted 28 U.S.C. § 1915(e)(2)(B) in 1996.  *See Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir.), *cert. denied*, 534 U.S. 1044, 122 S.Ct. 624, 151 L.Ed.2d 545 (2001).  However, dismissal is now mandatory under § 1915(e)(2)(B).  *Id.* at 1348-49.

[9]       "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

allegations must be enough to raise a right to relief above the speculative level,"
*Twombly, supra,* 550 U.S. at 555, 127 S.Ct. at 1965, and must be a "'plain statement'
possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'"  *Id.* at 557, 127
S.Ct. at 1966 (second brackets in original).  However, "[t]hreadbare recitals of the
elements of a cause of action, supported by mere conclusory statements, do not suffice."
*Iqbal, supra,* 556 U.S. at 678, 129 S.Ct. at 1949.  Furthermore, when a successful
affirmative defense, such as the applicable statute of limitations, appears on the face of a
complaint, dismissal for failure to state a claim is warranted.  *Jones v. Bock,* 549 U.S. 199,
215, 127 S.Ct. 910, 921-922, 166 L.Ed.2d 798 (2007).

Courts must liberally construe a *pro se* litigant's allegations and hold them to a
less stringent standard than allegations of an attorney contained in a formal pleading.
*Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); *see also*
*Tannenbaum v. United* States, 148 F.3d 1262, 1263 (11th Cir. 1998) (*per curiam*) ("Pro se
pleadings are held to a less stringent standard than pleadings drafted by attorneys and
will, therefore, be liberally construed."). However, courts do not have "license . . . to
rewrite an otherwise deficient pleading in order to sustain an action[.]"  *GJR*
*Investments, Inc. v. County of Escambia, Fla.,* 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled*
*on other grounds, Randall v. Scott*, 610 F.3d 701, 709-710 (11th Cir. 2010) (relying on *Iqbal*).
Furthermore, courts treat as true all factual allegations in the complaint, as amended,
but do not treat as true conclusory assertions or a formulaic recitation of a cause of
action's elements.  *Iqbal*, 556 U.S. at 681, 129 S.Ct. at 1951.  Finally, a *pro se* litigant "is
subject to the relevant law and rules of court, including the Federal Rules of Civil
Procedure."  *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.), *cert. denied*, 493 U.S. 863, 110
S.Ct. 180, 107 L.Ed.2d 135 (1989).

III. <u>Analysis.</u>

Plaintiff's sole claim against the defendants in this action is that they were deliberately indifferent to his health and safety by exposing him to an inmate with active TB—resulting in his testing positive for latent TB[10]—instead of taking proper actions when they were "surely" aware that Holmes was not taking his medications "properly." (*Compare* Doc. 14, at 4 *with* Doc. 16, at 1-2.)

This Court's analysis of whether plaintiff has stated an Eighth Amendment claim has two components. *Cf. Smith, supra,* 375 Fed.Appx. at 909 ("To state a claim of deliberate indifference, the plaintiff must allege both an objectively serious medical need and the subjective intent of deliberate indifference."). "First, the deprivation alleged must be, objectively, 'sufficiently serious[;]' a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities[.]'" *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994) (internal citations omitted). For a claim, like the instant one, based upon a failure to adequately screen, treat and quarantine an inmate for tuberculosis and the concomitant habitual exposure of inmates to other inmates who have active (i.e., contagious) tuberculosis, Matthews must present factual allegations supportive of a showing that he is

---

[10]      *Compare Metheney v. Anderson*, 953 F.Supp. 854, 855 (N.D. Ohio 1996) ("Tuberculosis is a communicable disease that generally affects the lungs, but also appears in other organs of the body. It is transmitted by the tubercle bacilli that are present in the lungs of infected individuals and are expelled by talking, coughing or sneezing. Tuberculosis exists in both dormant and active stages. During the dormant stage, the individual is not infectious and exhibits no symptoms. Only a few infected individuals develop active tuberculosis. With proper treatment—daily dosages of the antibiotic isoniazid for six to twelve months—an infected person probably will never develop active tuberculosis.") *with Holland v. Hanks*, 139 F.3d 901, 1998 WL 93974, *4 (7th Cir. Mar. 3, 1998) (unpublished opinion) ("While active infections are contagious and are associated with a variety of ill effects in the infected person, inactive infections are not. Treatment of active cases focuses on quarantine and treatment of the infection itself. By comparison, the focus in inactive cases is on monitoring them to ensure that they do not 'convert' to active cases.").

incarcerated under conditions posing a substantial risk of serious damage to his health. *Helling v. McKinney*, 509 U.S. 25, 35, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993).

The second component is that the "prison official must have a 'sufficiently culpable state of mind[,]'" *Farmer, supra*, 511 U.S. at 834, 114 S.Ct. at 1977 (citations omitted), since "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Id*. (citation omitted).  In conditions-of-confinement cases "that state of mind is one of 'deliberate indifference' to inmate health or safety[.]" *Id*. (citations omitted).  In *Farmer*, the Supreme Court defined the term "deliberate indifference" to require a showing by the inmate that the prison official was subjectively aware of the risk of serious harm to the inmate's health or safety. *See id*. at 829, 114 S.Ct. at 1974. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837, 114 S.Ct. at 1979; *see also id*. at 847, 114 S.Ct. at 1984 ("[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.").

With respect to the objective component of the analysis, it is clear that exposure to tuberculosis is a "serious" condition of confinement. *Compare Helling, supra*, 509 U.S. at 33, 113 S.Ct. at 2480 ("Nor can we hold that prison officials may be deliberately indifferent to the exposure of inmates to a serious, communicable disease on the ground that the complaining inmate shows no serious current symptoms.") and *Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974) (inmates entitled to relief under the Eighth amendment

8

when they proved threats to personal safety and health from exposed electrical wiring, deficient firefighting measures and the mingling of inmates with serious contagious diseases with other prison inmates) *with Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) ("A serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." (internal quotation marks omitted)). While the undersigned recognizes that Matthews has clearly pled facts supporting his position that he was exposed to TB sometime between August of 2010 and April, 21, 2011 and that his latent TB was a serious condition of his confinement at Fountain, with respect to the broader issue presented for this Court's review, plaintiff has failed to produce facts that would support his claim that cases of TB at Fountain are ignored or disregarded.  Although Matthews lists the names of other inmates housed in H-dorm who were tested for TB after Timothy Holmes was transferred, he has not alleged that these individuals or anyone else had active TB and remained in the general prison population thereby causing the disease to spread at Fountain.  To the contrary, he relates facts that indicate that once an active case of TB was discovered in H-Dorm, immediate actions were taken to protect inmates, corrections officials and health care providers from this contagious disease. [11] Accordingly, the undersigned must find that plaintiff has not presented specific factual allegations sufficient to show that he is entitled to relief, *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966, and, therefore, his factual allegations fail to state a claim upon which relief may be granted,  *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949.

---

[11]     Logically, it seems improbable (not plausible) that the medical care givers and corrections officials would knowingly allow Holmes to remain in their environment if they were aware that he was actually contagious or that there was a serious probability that he would contract an active case of TB because he was not taking his TB medication "properly."

Nevertheless, the undersigned considers the subjective component of the standard in the context of what has been alleged in this case by asking whether the defendants disregarded the substantial risk of serious harm to the plaintiff's health in 2011 "by failing to take reasonable measures to abate it." *Farmer, supra*, 511 U.S. at 847, 114 S.Ct. at 1984.  Within three days of Timothy Holmes being transferred from Fountain, the entire H-dorm was quarantined and tested for TB.  (Doc. 4, at 6.)  When plaintiff had a positive reaction to the skin test for TB, he received a chest x-ray that detected he had stage 2, noncontagious, TB.[12]  (*Id.* at 10.)  Thereafter, he was transferred to Kilby Correctional Facility where he was isolated to protect the health of others and received INH therapy and other treatment for his latent TB.  (*Id.* at 10-11.)

As was the case with his original complaint, plaintiff's amended complaints do nothing to satisfactorily plead the elements of an Eighth Amendment claim.  More specifically, in the amendments Matthews fails to allege any additional facts that would show any defendant knew that an active case of TB was present at Fountain and then that each defendant deliberately disregarded the risk posed to inmates (not to mention staff).  At best, plaintiff presents facts of negligent conduct as to some defendants, but

---

[12]   Where inmates have been exposed to TB but do not contract an active form of the disease, courts are reluctant to find harm; furthermore, when exposed inmates receive treatment that protects them from contracting later, contagious, stages of the disease, courts rarely find deliberate indifference to establish a constitutional violation.  *Compare Combs v. Nelson,* 419 Fed.Appx. 884, 887 (11th Cir. Jan. 18, 2011) ("The record will not support deliberate indifference. Instead, the record shows that the GDOC complied with their policies and procedures. Defendants responded reasonably upon becoming aware that an inmate was infected with active TB and treated Combs after it was determined that he had been exposed to, and infected with, latent TB. Combs presented no evidence that defendants disregarded the risk of inmates' exposure to TB. That Combs may have disagreed with the response time or with the underlying policy does not demonstrate deliberate indifference.") *with Gibbs v. Grimmette,* 254 F.3d 545, 547 (5th Cir. 2001) ("Because Gibbs suffered no injury [because he developed no active case of tuberculosis], the district court determined that there was no factual issue for the jury and dismissed the . . . claims."), *cert. denied,* 534 U.S. 1136, 122 S.Ct. 1083, 151 L.Ed.2d 983 (2002), and *Gooden v. Haley,* 2000 WL 206634, \*4-5 (S.D. Ala. Feb. 14, 2000) (no constitutional violation where prison took reasonable steps to protect the prisoner's health and did protect prisoner's health because he did not contract an active case of tuberculosis).

no constitutional violation.  *See Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]").[13] Plaintiff's allegations indeed demonstrate that reasonable steps were taken by officials at Fountain to abate the substantial risk of serious harm to the plaintiff's health and that plaintiff's health was not seriously harmed because he did not develop an active case of TB.  Accordingly, the undersigned finds that plaintiff has failed to allege that the defendants were deliberately indifferent to inmate health in general or the health of plaintiff in particular, as evidenced by the numerous and immediate actions taken with respect to each man housed in H-dorm after it was discovered that Timothy Holmes had an active case of TB.

    More specifically, as in plaintiff's original complaint, the allegations against defendants Warden White and Deputy Warden Mayers in plaintiff's amended complaints fail to state or allege, with supporting facts, that either defendant was personally involved in or causally connected to an alleged deprivation of plaintiff's constitutional rights.[14]  There is no custom or policy alleged to show deliberate indifference to communicable diseases.  Instead, plaintiff complains of an isolated incident.  Additionally, his factual allegations that attempt to attribute knowledge of Holmes' medical condition to White and Mayers are internally inconsistent.  He alleges

---

[13]    Plaintiff's allegations that the defendants knew Holmes was not taking his TB medication "properly," constitute nothing more than mere negligence.

[14]    "A causal connection may be shown by evidence of (1) a custom or policy that results in deliberate indifference to constitutional rights, (2) facts that support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so, or (3) a history of widespread abuse that notified the supervisor of the need to correct the alleged deprivation, but he failed to do so." *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009) (quotation marks, brackets and citation omitted).

that the medical staff—all LPNs, all RNs, the DON, and Dr. Lopez—failed to "notify the proper person or persons [about] Timothy Holmes not taking his medications properly" (Doc. 16, at 1-2), while at the same time alleging that Warden White and Deputy Warden Mayers "did not take proper actions on Timothy Holmes when [they were] aware and notified of his" failure to take his medications (*id*. at 2). The medical staff either did or did not warn defendants White and Mayers.  Taking all of plaintiff's facts as true and reviewing the incident in its entirety, the Court deduces that once the authorities at Fountain were aware that Timothy Holmes had an active case of TB and was contagious, he was transferred and precautions taken to protect other inmates and stop any spread of the disease.  Accordingly, plaintiff's second attempt, through his amended complaints, has failed to state a claim against defendants White and Mayers.

Plaintiff's claims against the medical defendants—that is, all LPNs, all RNs, the DON, and Dr. Lopez—fare no better.  If any defendant was aware that Holmes was not taking his TB medications, as plaintiff asserts, it would have been at least one of these defendants.  However, plaintiff has failed to present any specific factual support for the proposition that any medical defendant knew Timothy Holmes, or any other inmate in H-dorm, was contagious with a communicable disease.[15]  Just because a person has TB does not mean that he is contagious.  There is nothing in the record that indicates any defendant, not even the medical staff, had knowledge, or even reason to believe, that Timothy Holmes had active, contagious TB.  From the Court's evaluation of the facts, it appears that once the defendants became aware that an active case of TB existed at the

---

[15]      Plaintiff identified no nurse by name who allegedly "knew" Holmes was not taking his medication "properly" and merely avers that Dr. Lopez "surely" knew Holmes was not taking his medications "properly." Matthews offers no facts for why Dr. Lopez would "surely" know Holmes was not taking his medications properly, particularly in light of the fact that he nowhere links Lopez to the dispensing of those medications; instead, plaintiff merely references "medication dispensing nurses[.]" (Doc. 16, at 1.)

facility, they transferred the known contagious inmate and began to aggressively screen and treat all exposed inmates.  For these reasons, plaintiff has failed to state a claim against the medical defendants.

As to defendants ADOC insurance and CMS insurance, plaintiff does not specify any facts or allege any direct wrongdoing.  Therefore, plaintiff has failed to state a claim against defendants ADOC insurance and CMS insurance.

**IV.  Conclusion.**

Plaintiff was extended the opportunity to amend his original complaint and articulate facts necessary to succeed with his § 1983 action[16] with entry of the September 25, 2012 report and recommendation which identified the pleading deficiencies contained in his original complaint.  However, Matthews'  amended complaints go no further than did his original complaint to state a viable Eighth Amendment claim against the named defendants. Accordingly, it is recommended that this action be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief can be granted.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this 9th day of April, 2013.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[16]     "Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled, Wagner v. Daewoo Heavy Industries America Corp.*, 314 F.3d 541 (11th Cir. 2002); *compare id. with Langlois v. Traveler's Ins. Co.*, 401 Fed.Appx. 425, 427 (11th Cir. Oct. 22, 2010) ("We have since overruled this holding with respect to counseled defendants who failed to file a motion to amend or request leave to amend. . . . However, our decision in *Wagner* did not disturb our prior position with respect to *pro se* litigants like Langlois.").

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.      **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[17] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      **Transcript (applicable Where Proceedings Tape Recorded)**.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[17]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  FED.R.CIV.P. 72(b)(2).